May it please the court, my name is Glenn Reddick, I'm an Assistant City Attorney for the City of Columbus, I would like to reserve two minutes for rebuttal if that's necessary. As the court knows, the plaintiff alleged that they purchased a helicopter and they alleged that they purchased that helicopter pursuant to a contract. It has been the City's position throughout this case that the City is not and never was a party to this contract. This is a simple contract, it's an aircraft purchase agreement, the very first sentence of the agreement says this aircraft purchase agreement is between Air Flight Inc, here and after referred to as seller, and Versatile Helicopters Technologies, here and after referred to as the purchaser. At the end of the contract, three pages later, purchaser, there's a signature of Scott Baker as the owner, president of Versatile Helicopters, and there's a signature from Mark White who is the president of Air Flight Inc. Nowhere in this document is there any clause or does anyone sign the contract as they are operating as an agent for the City of Columbus. What about the marketing language in the marketing agreement, would you just ignore that? Well, I would say this, the last part of this agreement on page three says this agreement supersedes all previous agreements, if any. So the parties agreed that the only terms and conditions that they were going to be bound for was in this purchase agreement. Pursuant to the marketing agreement, Air Flight Inc. was our authorized agent. But that language would just mean it supersedes all previous agreements between the signatories to that agreement. It doesn't mean that it would nullify any agreements between Columbus and the marketing firm. No, and I agree, we've never denied that Mark White was our authorized agent. He did exactly what we asked him to do. We did not want to be involved in selling a helicopter. That's not something that the City of Columbus does on a routine basis. We don't know anything about it. We don't know how to price it. We don't know what the terms and conditions, obviously pursuant to this contract, the helicopter was sold as is, where is, with no warranties. The City of Columbus has no experience in selling helicopters. So we said to Mark White, you go out, you sell the helicopter for us. He was paid for that. He had all the negotiations with the plaintiff. At the time this agreement was signed, Mr. Scott Baker had never talked to anybody from the City of Columbus. He had never looked at the helicopter. He signed the agreement buying the helicopter sight unseen. This agreement does not reference the City of Columbus. We raised that issue in our motion for summary judgment. We raised that issue in our Rule 50 motion at the close of plaintiff's evidence, and we renewed that motion at the close of all of the evidence. As this court knows, you review that matter de novo. We believe that when you look at this contract de novo, you will conclude that the City of And I would respectfully submit to the court as further evidence that Air Flight, Inc. was to be bound by this contract. The governing laws, part of this contract says laws of the State of Oklahoma shall govern this agreement and this transaction. And the parties further agree that venue for any matter relating to this agreement shall be in Pottawatomie County. Now that's where Air Flight, Inc. is located. Clearly, Air Flight, Inc. was signing for themselves, not for anyone else. But that argument completely ignores any discussion of the law of agency and a lot of ramifications that are involved in this case. Yes, sir. And the law of Ohio and the law of this circuit is that when an agent signs not as agent but as themselves, then the principle is not bound. And the law of agency as set forth by this circuit is that generally speaking, the real contract should be determined from the intention of the parties as expressed by the instrument itself. If the terms of the instrument show an intention to bind the principle, the agent is not liable. Such intention gathered from the terms of the instrument must control. Here the terms of the instrument provide otherwise, that Air Flight, Inc. and Versatile Helicopters are the only parties to this contract. If there are no further questions, I've said this 16 times in my brief. I don't know how many times I can make it any more clear, the city's position. Well, you've picked the horse you want to ride, for better or worse, I'll give you that. I have indeed, and I would just say in conclusion that we believe that the court should enter final judgment for the City of Columbus when it reviews this contract de novo, and that of course would moot all of the other aspects of this appeal. Thank you for your kind attention. Good morning, Your Honors. Phil Eikenrode on behalf of Versatile Helicopters. First I'd like to address the city's appeal, and then if there are additional questions I'm happy to answer them and then move on to the cross appeal that's been asserted in this case. Your Honors, the district court properly denied the Rule 50 motions at both the conclusion of the plaintiff's case and at the conclusion of all the evidence, finding that a reasonable jury would have a legally sufficient evidentiary basis to find that by virtue of agency law, the City of Columbus was bound by the contract despite their name not appearing in the contract. As Your Honor pointed out a few moments ago, it is Hornbook agency law which applies in this case and is relevant to this case, which states that an agent entering into a contract on behalf of a principal can bind that principal to that contract so long as the agent is acting with either actual or apparent authority, and the evidence at trial, which was before the district court when it denied the Rule 50 motions, there was an abundance of evidence supporting both actual and apparent authority. Now, Mr. Reddick said in argument that the City of Columbus didn't want to be involved in selling a helicopter, wasn't in the business of selling a helicopter. Well, the evidence at trial, Your Honors, was that despite the fact that Air Flight and Mr. White on behalf of Air Flight was the one having the primary negotiations with Scott Baker of Versatile Helicopters, George Speaks, who was the Deputy Director of Public Safety for the City of Columbus, had the final say on any and all offers made for the helicopter. And again, this was a City of Columbus helicopter, and we know that because it was a Columbus Police Department helicopter. Mr. Baker on behalf of Versatile Helicopters, when we start considering whether there was at least apparent authority to bind the city, Mr. Baker knew that this was a City of Columbus helicopter. He knew that the City of Columbus was selling the helicopter. He testified to that at trial. He knew it was a Police Department helicopter. It obviously wasn't an Air Flight Police Department helicopter. It was a Columbus Police Department helicopter. So there was an abundance of evidence before the trial court in denying the Rule 50 motions at the time that they were denied. Also, they did get a bite at that apple by the jury, didn't they, before the jury? Absolutely, Your Honor. There were agency instructions included in the jury instructions. Mr. Reddick was able to make this argument to the jury that the city should not be bound by the contract. There was also argument made at the time that there was no breach of contract, of course, which is not particularly germane to this appeal now. It is the agency horse, as Your Honor pointed out. But yes, that opportunity was presented to the jury, and obviously the jury rejected it. If there are no further questions about the city's appeal, I'd like to move to the cross appeal if that would be okay. Your Honor, the district court erred in denying both a motion for relief to file an amended prayer and also a motion pursuant to Rule 59E at the close of trial to enter judgment in the amount actually awarded by the jury of approximately $380,000. Since the beginning of this case, this case has always included consequential damages that plaintiff would be seeking at trial. So there are two types of damages. We had damages to repair the helicopter and bring it into the condition it was supposed to have been sold in and warranted to have been sold in. And then there were additional damages that flowed from lost use of the helicopter, for having to go out and find a replacement helicopter, for losing part of the contract that this helicopter was supposed to service. These helicopters fly over top of cherry trees and apple trees at very low altitudes at walking speed, and they blow the water off the cherry trees and they blow the water off the apple trees so that the rainwater doesn't enter the fruit and rot it. This is a very lucrative contract for versatile helicopters, as was testified to at trial. And they bought this helicopter for the sole purpose of needing it up in the state of Washington to service a contract at Geber Farms. So they didn't have a lot of time to tear this helicopter apart and rebuild it, but essentially that's what had to be done. So there was consequential damages that flowed from that. Now those damages were always a part of this case. The amended complaint was filed in May of 2011 and contained four causes of action. Breach of contract, UCC, negligent misrepresentation against a party that's no longer a party to this case, and account four for damages. Now whether damages in and of themselves should be pled as a separate cause of action, obviously the district court took issue with that. But it cannot be said that paragraph 64 and 65 of the amended complaint contained pretty good detail on exactly what consequential damages would be pursued by the plaintiff at trial. And that included, again, lost use, replacement helicopter, et cetera. Was there any discussion relative to jury instructions, excuse me, or objections relative to the issue of whether the jury would be able to bring back these consequential damages? There was an initial discussion held on the Monday, the first day of trial, when the district court denied the relief that had been sought. And I believe without discussion even from counsel, the district court decided that plaintiff would have the opportunity to present evidence of those damages, and regardless of what the jury found, he would enter judgment only for $250,000. So he basically said, if you get up to $250,000, you get whatever you get. If you get more than $250,000, I'm giving you $250,000, and that's exactly what happened. And so the jury had no idea any of this was going on, and Mr. Baker testified at length at trial about the consequential damages. And what's important to point out is that Mr. Baker testified at his deposition for two days, a year earlier, about these damages. The key consideration under Rule 15, or our analysis of Rule 59E as meshed with Rule 54C, is whether the other side had notice, whether the side had a reasonable opportunity to prepare to defend itself at trial. And what the district court said in its decision denying our 59E motion was that the city evaluated and litigated this case as only a $250,000 case. And respectfully, Your Honors, that's just not so. Mr. Baker was present at all, or I'm sorry, Mr. Reddick was present at all those depositions when Mr. Baker testified as to consequential damages. The district court's final pretrial order that came out just one month before trial stated that both the breach of contract and the UCC claims would go to trial. And it was that UCC claim that had the, quote, uncapped prayer for relief. So your position is really that although you had hoped that all your claims would remain alive, that once you had some of them knocked out, that's really what created this divergence in the prayer for relief. That's correct, Your Honor. It was literally the Friday before trial was to start on Monday. A conference call was held between the parties and the district court. And there had been for probably a year a discussion among the parties and the court over whether Oklahoma law or Ohio law applied to the substantive contract questions. Clearly, agency law would apply to, I'm sorry, Ohio law would apply to the agency question. And what the district court decided on the Friday before trial was that no, Oklahoma law is going to apply to interpret the contract. And despite the fact that Oklahoma law and Ohio law as to the UCC are identical, we're going to apply Oklahoma law. So because you cite Ohio law in count two of the complaint, I'm throwing out count two of the complaint. And that's when it was Friday at 3.30 or whenever that happened that we said, well, let's make this clear that we're asking for all the damages on the breach of contract. And that's why we filed a pretty short motion for relief to amend the prayer. The Monday of trial that was denied and we went forward just on the breach of contract claim knowing what the district court was going to do and that's what happened. Your Honor, we've cited several cases in the briefs which have virtually identical issues where parties were on even worse footing than we were in terms of amending prayers for relief or asking for an increase in damages, sometimes right before closing argument. And the position of those courts has always been, as should the position of this court be, is that so long as the other side has had notice that these are damages that are going to be sought and so long as the other side has had an opportunity to defend itself, there should be no discussion or question over whether the prayer for relief should reflect the actual damages sought at trial and in this case, the actual damages awarded by the jury of approximately $380,000. And if there are no further questions? All right. We thank you both for your argument. Thank you, Your Honor. We'll consider the case carefully. Let me take a quick one. We're going to take it. Oh, I'm sorry. Never mind. I'm sorry. Mr. Reddick, you reserved two minutes and I forgot about it. Not to worry, Your Honor. I simply... I was obviously getting a little too overeager to feed the morning along. It's black letter law that when a third party contracts with an agent alone, the party cannot maintain an action against the agent's principle. Even if the agent's principle is disclosed, if the agent does not enter into the contract as agent but as the sole contracting party, the principle is not bound. That's exactly what happened here. The district court should have entered a final judgment for the city of Columbus. Thank you for your time. And on the damage issue, you're standing on your brief, I take? Yes, Your Honor. Okay. Okay. Thank you. All right. Now we thank you both for your argument. We'll consider the case carefully. And we're going to take a break.